**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

PLACIDA N. ROBINSON,

Debtor.

**FOR PUBLICATION**

Case No. 17-10275 (MG)

Chapter 7

ASPIRE FEDERAL CREDIT UNION,

Plaintiff,

v.

PLACIDA N. ROBINSON,

Defendant.

Adv. Pro. Case No. 18-01014 (MG)

# MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS DENIAL OF DISCHARGE ADVERSARY PROCEEDING

***A P P E A R A N C E S:***

PERKINS COIE LLP
*Attorneys for Defendant*[1]
30 Rockefeller Plaza, 22th Floor
New York, NY 10112-0085
By: Schuyler G. Carroll, Esq.
Robert T. Yusko, Esq.

Frydman LLC
*Attorneys for Plaintiff Aspire Federal Credit Union*
501 Fifth Avenue, 15th Floor
New York, New York 10017
By: David S. Frydman, Esq.
Glen Lenihan, Esq.

[1] On April 9, 2018, Defendant's counsel filed the Motion to Dismiss. Counsel was the Debtor's second lawyer to appear in this case, after the first lawyer's motion to withdraw was granted. Perkins Coie was representing the Debtor *pro bono* in this case. On October 23, 2018, Perkins Coie moved to withdraw as counsel for the Debtor because of irreconcilable differences. On November 21, 2018, Perkins Coie' motion to withdraw was granted. The Debtor-Defendant now appears in this case *pro se*. Because the Motion to Dismiss remained pending after Perkins Coie's withdrawal, the Court now rules on the pending Motion.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion, filed on behalf of the debtor-defendant, Placida N. Robinson ("Robinson"), to dismiss the denial of discharge adversary complaint filed by Aspire Federal Credit Union ("Aspire"). ("Motion," ECF Doc. # 11.) Aspire filed an opposition to the Motion. ("Opposition," ECF Doc. # 39.) For the reasons explained below, the Motion is **DENIED**.

## I. BACKGROUND

### A. Case Background

Aspire made three loans to Robinson's wholly owned taxi companies: Nine T Thirty One Shearn Corporation ("9T31"), 5584 Chicago Corporation ("5584") and 2331 Chicago Corporation ("2331," and with 9T31 and 5584, each a "Company" and collectively, the "Companies"). (Compl. ¶¶ 6, 7, 15, 17.) In December 2013 and January 2014, Robinson caused each Company to take a loan from Aspire and secured by an interest in the Company's property, including vehicles, medallions, moneys, accounts and receivables. (*Id.* ¶¶ 7, 15, 17.) Robinson personally guaranteed the repayment and other obligations of each Company under the loan documents. (*Id.* ¶¶ 15, 17.) The 9T31 loan required monthly payments of $3,890.17, and the 2331 and 5584 loans each required monthly payments of $1,082.27. (*Id.* ¶ 18.) By May 2016, Aspire served notice of defaults and acceleration for each of the loans. (*Id.* ¶¶ 11, 18.)

On or about October 19, 2016, Aspire filed an action in the Supreme Court of the State of New York against Robinson and 9T31 for replevin of collateral owned by 9T31 consisting of a New York City taxi medallion and vehicle. (*Id.* ¶ 19.) Aspire submitted a motion for an order of seizure. (*Id.*) Days later, Debtor filed the chapter 7 petition

("Petition") in an apparent bid to block the state court from granting Aspire replevin of the collateral. (*Id.* ¶¶ 8, 20.)

**B. Complaint**

Aspire commenced this adversary proceeding objecting to the Debtor's discharge under sections 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), 727(a)(4)(D), 727(a)(5), and 523(a)(6) of the Bankruptcy Code. The Complaint contains the following factual allegations:

(i) Debtor evaded Aspire's security interest;
(ii) Debtor's petition and schedules are materially false;
(iii) Debtor gave materially false testimony at the section 341 meeting;
(iv) Debtor failed to keep books and records;
(v) Debtor transferred funds representing Aspire's collateral; and
(vi) Debtor converted and encumbered Aspire's collateral.

**C. Motion to Dismiss Pursuant to Rule 12(b)(6)**

Robinson moves to dismiss all six claims for relief in the Complaint under Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Mot. at 5.) Robinson argues that the Complaint against her should be dismissed for two reasons. First, the factual assertions are barebones; Aspire's vague assertions fail to specifically request a piercing of the corporate veil, and Aspire merely copies and pastes into the Complaint the entirety of the Bankruptcy Code sections that allegedly have been violated. (*Id.* at 5.) Second, Robinson contends that the Complaint fails to allege that she intended to violate sections 523(a)(6) and 727(a), a necessary element of those sections.

## II. LEGAL STANDARD

### I. Dismissal Under Fed. R. Civ. Pro. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a complaint need only allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis removed)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). "The question in a Rule 12 motion to dismiss is 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 320 (S.D.N.Y. 2015) (citing *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012)).

Courts use a two-pronged approach when considering a motion to dismiss. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (stating that motion to dismiss standard "creates a 'two-pronged approach' . . . based on '[t]wo working principles'") (quoting *Iqbal*, 556 U.S. at 678–79); *McHale v. Citibank, N.A. (In re the 1031 Tax Grp., LLC)*, 420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009). First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *Iqbal*, 556 U.S. at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a

court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678). Second, the court must determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). A complaint that pleads only facts that are "merely consistent with" a defendant's liability does not meet the plausibility requirement. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

On a motion to dismiss, in addition to the complaint, a court may consider written instruments, such as a contract, that are either attached to the complaint or incorporated by reference. *See, e.g.*, Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Official Comm. of Unsecured Creditors v. Conseco Fin. Servicing Corp. (In re Lois/USA, Inc.)*, 264 B.R.

69, 89 (Bankr. S.D.N.Y. 2001) ("In addition to the complaint itself, a court may consider, on a motion to dismiss, the contents of any documents attached to the complaint or incorporated by reference. . . .").

## II. DISCUSSION

While Robinson correctly points out that Aspire copied and pasted into the Complaint the entirety of relevant Code sections, without building the factual allegations into each claim, this does not mean the Complaint fails to allege sufficient facts that make the claims for relief plausible. The Court will analyze each of the claims in turn.

### A. First Claim for Relief

#### *1. Section 727(a)(2)(A)*

Section 727(a)(2) precludes discharge when "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title [such as the Trustee], has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) *property of the debtor*, within one year before the date of the filing of the petition." 11 U.S.C. §727(a)(2) (emphasis added).

#### *2. Analysis*

To state the concealment claim under section 727(a)(2)(A), the Complaint must allege that (i) the property at issue belonged to Robinson; (ii) she concealed it; (iii) she did so with the intent to hinder, delay, or defraud her creditors; and (iv) she either did so within one year before the date of the filing of the petition or her initial act of concealment took place before this one-year period but she then allowed the property to

remain concealed into the critical year. *See In re Boyer*, 328 Fed. Appx. 711, 714–15 (2d Cir. 2009) (internal citations omitted); *In re Shah*, 2010 WL 2010824, at *7 (Bankr. S.D.N.Y. May 13, 2010).

Robinson's attack on Aspire's first claim for relief under section 727(a)(2)(A) centers on the assertion that Aspire should have requested a piercing of the corporate veil in the Complaint. (Mot. at 12.) Specifically, Robinson argues that "since all of Plaintiff's claims rely upon the *Corporations' disposition* of Plaintiff's alleged collateral, and the Plaintiff did not plead to pierce the corporate veil, the Complaint must be dismissed in its entirety for failure to state a plausible cause of action." (*Id.*) (emphasis added). In the Opposition, Aspire partially addresses this argument by pointing out that not all of Aspire's claims depend on the Companies' disposition of Aspire's alleged collateral. (Opp'n at 17.) Specifically, allegations that Robinson concealed her property—as opposed to the Companies' property—can survive Robinson's motion to dismiss. (*Id.*)

To the extent that Aspire's Opposition addresses the veil-piercing argument, Aspire's argument is more convincing. Indeed, in addition to the conversion of collateral by the Companies, the Complaint alleges with sufficient specificity that Robinson concealed her status as a shareholder of a cooperative apartment, a personal investment account, 100% ownership of Three Two Nine Corp., receipt of governmental assistance, and a $50,000 claim against her ex-husband. (Compl. ¶ 21A–S.) All of these properties constitute "property of the debtor" as that term is used in section 727(a)(2)(A).

Robinson's veil-piercing argument is also unavailing. Courts have recognized that in the context of section 727(a)(2), corporate distinctions may be disregarded, and

the assets of those entities may be treated as the assets of the debtor when the facts warrant the application of those theories. *See* 7 COLLIER ON BANKRUPTCY ¶ 727.02[1] (16th ed. rev. 2013) (citing *Barclays/Am. Business Credit (In re Adams)*, 31 F.3d 389 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111 (1995) (concluding that property of corporation controlled by debtor considered to be property of debtor for purposes of section 727(a)(2)). *See also* *Doubet, LLC v. Palermo (In re Palermo)*, 370 B.R. 599, 613–14 (Bankr. S.D.N.Y. 2007) ("By orchestrating complex fee arrangements between his various alter ego entities, Palermo acted with the requisite intent to hinder creditors by taking cash advances on his future earnings, assigning his payments to those lenders in repayment, transferring his property between accounts, and squandering the balances.").

In *Adams*, the Sixth Circuit affirmed the bankruptcy court's treatment of a corporation's accounts receivable as the funds of the individual debtors because the debtors "controlled" the corporation. Here, Robinson allegedly is the 100% shareholder and sole officer of the Companies that converted Aspire's collateral. (Compl. ¶ 7.) Additionally, in support of the veil-piercing argument, Robinson cites *Beach Lane Mgmt., Inc. v. White (In re White)*, 2015 WL 9274771, at *3 (Bankr. S.D.N.Y. Dec. 18, 2015). That case is distinguishable as it involved a transfer between the debtor's company and a charitable organization. *Id.* at *12. At issue here are numerous transfers between Robinson and various entities under her sole control, namely, the Companies. Therefore, the assets of those Companies may be treated as the "property of the debtor" under section 727(a)(2)(A).

Here, the Complaint sufficiently alleges that Robinson transferred, removed or concealed her property within one year prior to filing the Petition and did so with the

intent to hinder, delay or defraud Aspire or the Trustee. The Complaint alleges that in or around May 2016, Robinson and the Companies defaulted on their loan obligations to Aspire and Aspire served notices of default and acceleration. (Compl. ¶ 18.) At the same time (and within one year prior to filing the Petition), Robinson allegedly changed her usual course of conduct and caused the Companies to stop remitting loan payments from business receipts. (*Id.* ¶ 37.) Instead, among other things, Robinson allegedly caused the Companies to pay Robinson's personal expenses and transferred at least $50,881 among the Companies and Robinson's personal accounts. (*Id.* ¶ 34.) Importantly, these allegations constitute circumstantial evidence of Robinson's intent to hinder, delay or defraud Aspire's rights as a creditor.

Since the Complaint contains factual allegations related to section 727(a)(2)(A) with sufficient specificity, the Motion with respect to the first claim for relief is **DENIED**.

**B. Second Claim for Relief**

*1. Section 727(a)(3)*

Section 727(a)(3) permits the court to deny the debtor a discharge if the plaintiff proves that the debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained." 11 U.S.C. § 727(a)(3). To prevail under section 727(a)(3), an objecting creditor must prove that the debtor (1) failed to keep and maintain adequate books and records and that (2) such failure makes it impossible to discern the debtor's true financial

condition and to identify material transactions. *See In re Jacobowitz,* 309 B.R. 429, 436 (S.D.N.Y. 2004).

The purpose of Section 727(a)(3) is to provide creditors and the court with "complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requirement to a discharge." *Nof v. Gannon (In re Gannon),* 173 B.R. 313, 321 (Bankr. S.D.N.Y. 1994) (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir.1992)). As such, "the purpose of section 727(a)(3) is not record-keeping for its own sake," *In re Sethi,* 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000), but rather "to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." *In re Goldstein,* 123 B.R. 514, 522 (Bankr. E.D. Pa. 1991). While the adequacy of documentation depends on the circumstances, complete disclosure is required in every case. *In re Underhill,* 82 F.2d 258, 259 (2d Cir. 1936).

Courts have considered several factors in determining whether the circumstances of a case warrant a denial of discharge under 727(a)(3), including:

> (1) the complexity and volume of the business;
> (2) the amount of the debtor's obligations;
> (3) whether the failure to keep records was the debtor's fault;
> (4) the debtor's business experience and sophistication;
> (5) the customary business practices for record keeping in the debtor's type of business;
> (6) the degree of accuracy disclosed by the debtor's existing books and records; and
> (7) the extent of any egregious conduct on the debtor's part.

*In re Frommann,* 153 B.R. 113, 117 (Bankr. E.D.N.Y. 1993).

Intent to defraud is not an element of Section 727(a)(3). *See In re Kressner,* 206 B.R. 303, 315–16 (Bankr. S.D.N.Y. 1997) (citing *In re Potter*, 88 B.R. 843, 848 (Bankr. N.D. Ill. 1988)).

*2. Analysis*

Here, Robinson contends that "every subsection of 727(a) requires some form of intent on the part of the Defendant." (Mot. at 9.) This incorrectly characterizes the law. In fact, "[i]ntent is not an element of section 727(a)(3)." *In re Palermo*, 370 B.R. 599, 618 (Bankr. S.D.N.Y. 2007) (citing *In re Kressner*, 206 B.R. 303, 315–16 (Bankr. S.D.N.Y. 1997)). *See also In re Gardner*, 384 B.R. 654, 665 (Bankr. S.D.N.Y. 2008) ("Under this provision, there is no intent requirement; only a showing that the debtor failed to keep records that a reasonable person would maintain is necessary.") In the Opposition, Plaintiff makes the same argument, also citing this Court's *Gardner* decision. (Opp'n at 19.)

To state the claim for relief under section 727(a)(3), the Complaint alleges that "Debtor has admitted that Debtor does not have accounting records (either in paper, through electronic programs like QuickBooks or otherwise), copies of checks, checkbooks, registers, journals, invoices and records of payments received and made." (Compl. ¶ 29; Opp'n at 20.) Thus, the Complaint alleges that the Debtor has failed to keep and maintain any accounting records. This satisfies the first element of section 727(a)(3).

Moreover, the Complaint alleges with sufficient specificity that the Debtor's failure to adequately maintain books and records makes it impossible to determine the Debtor's true financial condition. The relevant allegations in the Complaint are:

> In the Rule 2004 Production, Debtor produced books and records for the medallion business consisting primarily of bank and credit card statements for some sixteen accounts in the name of Debtor, the Companies and 329. The bank statements contained a handful of copies of paid checks, and otherwise fail to identify the sources and uses of hundreds of thousands of dollars of funds that flowed through and among the accounts. Debtor, with minor exceptions,

> produced no documents backing up or evidencing the hundreds of transfers and payments.

(Compl. ¶ 27.)

Additionally, the Complaint touches on the fourth *Frommann* factor—"debtor's business experience and sophistication"—with allegations that the Debtor is highly educated, has a graduate degree from Columbia University with a concentration of coursework in business administration and is an experienced business person, who has been in the business of operating taxicab medallions since 2006. (*Id.* ¶ 7.)

Because the Complaint pleads with sufficient specificity that Robinson violated section 727(a)(3) by failing to maintain adequate books and records to the extent that Aspire cannot ascertain Robinson's financial condition, the Complaint survives the Motion to dismiss. Therefore, the Motion with respect to the second claim for relief is **DENIED**.

### C. Third Claim for Relief

#### *1. Section 727(a)(4)(A)*

Section 727(a)(4)(A) denies a discharge to the debtor who knowingly makes a material, false statement with fraudulent intent. *Dubrowsky v. Perlbinder* (*In re Dubrowsky*), 244 B.R. 560, 572 (E.D.N.Y. 2000); *Nof v. Gannon* (*In re Gannon*), 173 B.R. 313, 319 (Bankr. S.D.N.Y. 1994); *Zitwer v. Kelly* (*In re Kelly*), 135 B.R. 459, 461 (Bankr. S.D.N.Y. 1992). The plaintiff must establish by a preponderance of the evidence that the debtor (1) made a statement under oath, (2) the statement was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case. *Vidomlanski v. Gabor* (*In re Gabor*), 2009 WL 3233907, at *7 (Bankr. S.D.N.Y. Oct. 8, 2009); *Bank of India v.*

*Sapru* (*In re Sapru*), 127 B.R. 306, 314 (Bankr. E.D.N.Y. 1991). The bankruptcy petition and schedules of a debtor are considered statements under oath, *Gabor*, 2009 WL 3233907, at *7; *Gannon*, 173 B.R. at 320, and both omissions and affirmative misstatements can constitute false statements under section 727(a)(4)(A). *Gabor*, 2009 WL 3233907, at *7; *Forrest v. Bressler* (*In re Bressler*), 387 B.R. 446, 460 (Bankr. S.D.N.Y. 2008).

A statement is material if it bears on the discovery of estate property or the debtor's business dealings. *Gannon*, 173 B.R. at 319–20. Moreover, "otherwise immaterial falsehoods or omissions can aggregate into a critical mass substantial enough to bar a debtor's discharge." *Bressler*, 387 B.R. at 462; *accord Gabor*, 2009 WL 3233907, at *9; *Sapru*, 127 B.R. at 315–16 (Bankr. E.D.N.Y. 1991) ("[E]ven if each falsehood or omission considered separately may be too immaterial to warrant a denial of discharge pursuant to § 727(a)(4)(A) certainly the multitude of discrepancies, falsehoods and omissions taken collectively are of sufficient materiality to bar the Debtor's discharge.").

In determining fraudulent intent, the court can consider, among other factors, the debtor's level of financial sophistication. *Rossi v. Moreo* (*In re Moreo*), 2009 WL 2929949, at *8 (Bankr. E.D.N.Y. Sept. 10, 2009). Furthermore, reckless indifference to or disregard of the truth is the equivalent of fraud for the purposes of section 727. *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) (Posner, J.); *Salomon v. Kaiser* (*In re Kaiser*), 722 F.2d 1574, 1583 n.4 (2d Cir. 1983); *see also Diorio v. Kreisler–Borg Constr. Co.*, 407 F.2d 1330, 1331 (2d Cir. 1969) ("Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt. . . . [R]eckless

indifference to the truth . . . is the equivalent of fraud."). "[T]he cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A)." *Kaiser*, 722 F.2d at 1583 n.4 (quoting *Guardian Indus. Prods., Inc. v. Diodati (In re Diodati)*, 9 B.R. 804, 808 (Bankr. D. Mass. 1981); *accord Gabor*, 2009 WL 3233907, at *9 ("[N]umerous omissions that display a pattern of misleading conduct are sufficient to establish a fraudulent false oath.") (quoting *In re Bressler*, 387 B.R. at 462.).

*2. Analysis*

To state a claim under section 727(a)(4)(A), the Complaint must allege that Robinson knowingly made a false statement material to her bankruptcy case under oath with fraudulent intent. The Complaint adequately does so. First, the Complaint sets forth allegations that Robinson made false statements under oath in the Petition and schedules, the Creditor's Meeting, and Rule 2004 examinations. (Compl. ¶¶ 10, 13, 21–24.) These factual allegations are sufficiently specific. And they are not "legal conclusions clothed in factual garb." *See, e.g.*, *Iqbal*, 556 U.S. at 677–78. Second, these false statements are material because they relate to Robinson's assets and transactions. (*Id.* ¶¶ 10, 13, 21–24.) Third, the cumulative effect of Robinson's false statements under oath "evidences a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by section 727(a)(4)(A)." *Kaiser*, 722 F.2d at 1583 n.4 (quoting *Guardian Indus. Prods., Inc. v. Diodati (In re Diodati)*, 9 B.R. 804, 808 (Bankr. D. Mass. 1981)).

Robinson attributed the false statements in the petition and schedules to the misguidance of her first counsel. (Mot. at 6.) At the Rule 12(b)(6) stage, this argument

is premature and unconvincing; Robinson at most raises questions of fact for trial about a reliance of counsel defense. *SEC v. Res. Mgmt. Co. (In re Res. Fund Sec. & Derivative Litig.)*, 732 F.Supp.2d 310, 321 n.8 (S.D.N.Y. 2010) (denying motion to dismiss, "[t]he Second Circuit has held that where a defendant alleges that it acted in good faith and on advice of counsel, that defense generally presents a 'triable issue' of fact") (citing *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1560 (2d Cir. 1989)).

Since the Complaint contains factual allegations related to section 727(a)(4)(A) with sufficient specificity, the Motion with respect to the third claim for relief is denied.

**D. Fourth Claim for Relief**

*1. Section 727(a)(4)(D)*

Denial of a discharge under section 727(a)(4)(D) requires that the objecting party prove the following elements:

(i) the debtor knowingly and fraudulently;
(ii) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers relating to the debtor's property or financial affairs; and
(iii) in or in connection with the debtor's own case.

Courts have interpreted this provision as imposing an affirmative duty on the Debtor to cooperate with the trustee "by providing all requested documents to the trustee for his review, and failure to do so constitutes grounds for denial of discharge." *In re Erdheim*, 197 B.R. 23, 28 (Bankr. E.D.N.Y. 1996) (holding that the debtor failed to fulfill the duty to cooperate when the trustee was forced to seek production from third parties of documents the debtor had available to him). Unlike section 727(a)(3), this subsection requires a finding of intent. The circumstantial evidence supporting the requisite intent to act "knowingly and fraudulently" was found to exist in other cases when the debtor's

conduct was evasive or persistently uncooperative, *In re Young*, 346 B.R. 597, 615 (Bankr. E.D.N.Y. 2006), or when the debtor claimed to turn over documents but did not provide supporting evidence that he did so, withheld records after numerous requests, or failed to explain the failure to comply with the order to produce documents. *Id.* at 615–616 (collecting cases). These cases are distinguishable from those instances in which a discharge was not denied because the records were not available to the debtor through no fault of his or her own. *Id.*

*2. Analysis*

The Complaint alleges that Robinson knowingly failed to submit to the Trustee records concerning the sources and uses of funds; transfers between and out of the various personal and business accounts; and accounting records and financial statements. (Compl. ¶¶ 14, 25.) Additionally, allegations of Defendant's repeated false statements and evasive conduct since her defaults in May 2016 support a plausible inference of the requisite intent to act knowingly and fraudulently. (*Id.* ¶¶ 13–14, 20–24.) Since the Complaint contains factual allegations related to section 727(a)(4)(D) with sufficient specificity, the Motion with respect to the fourth claim for relief is **DENIED**.

**E. Fifth Claim for Relief**

*1. Section 727(a)(5)*

Section 727(a)(5) precludes a discharge if the debtor fails to satisfactorily explain any losses or deficiencies of assets to meet the debtor's liabilities. The purpose of section 727(a)(5) is to prevent the abuse of the bankruptcy process by the debtor "obfuscating the true nature of [the debtor's] affairs, and then refusing to provide a credible explanation." *In re Johnson*, 98 B.R. 359, 366 (Bankr. N.D. Ill. 1988) (quoting *In re*

*Martin,* 698 F.2d 883, 888 (7th Cir.1983)). If the debtor can account for all assets, the explanation does not have to be praiseworthy. *See Nate B. and Francis Spingold Foundation, Inc. v. Halperin (In re Halperin),* 215 B.R. 321, 333 (Bankr. E.D.N.Y. 1997). Similarly, irresponsible spending itself is not a failure to explain, as long as the debtor can indicate where the assets were spent. *See Continental Illinois Nat'l Bank and Trust Co. of Chicago v. Bernard (In re Bernard),* 99 B.R. 563, 571 (Bankr. S.D.N.Y. 1989) ("[t]hat the debtor did not tighten his belt in the face of a financial downturn does not mean that the debtor failed to explain where his annual income went."). On the other hand, the debtor must offer "much more in the way of explanation than vague generalities." *In re Sperling,* 72 F.2d 259, 261 (2d Cir. 1934).

*2. Analysis*

To survive the Motion, the Complaint must allege a loss or deficiency of assets and Defendant's failure to satisfactorily explain the loss. The Complaint alleges both with sufficient specificity:

- "Debtor . . . within one year of filing the Petition, in prior years and since filing the Petition, has commingled funds in dozens of transactions totaling hundreds of thousands of dollars among the Companies, 329 and Debtor without any record keeping of the transactions." (Compl. ¶ 33.)
- "Debtor . . . used the Companies' and 329's funds to pay personal expenses and transferred funds to Debtor's personal accounts, totaling tens of thousands of dollars." (*Id.* ¶ 34.)
- "Prior to the May 2016 default of Debtor's guaranties and the Companies' loan obligations to Aspire, Debtor's course of conduct was to cause the Companies to timely pay Aspire each month with business receipts. After Debtor's defaults, Debtor changed Debtor's course of conduct and transferred the business receipts, formerly remitted to Aspire, to Debtor and Debtor's businesses." (*Id.* ¶ 37.)
- "The following are examples of some of the dozens of undocumented transactions Debtor has engaged in:

- Between November 25, 2013 - January 29, 2014, transfers of approximately $450,000 among accounts;
- Between January 2013 and the Petition Date, transfers from the Companies and 329 to Debtor's personal accounts, totaling approximately $105,000; and
- Between June 2016 and August 2017, transfers from the Companies, including transfers among the Companies and to Debtor's personal accounts, exceeding $50,881.09." (*Id.* ¶ 39.)

Not only does the Complaint allege that Robinson dissipated the funds, it also alleges that she has been unable to explain the use of the funds or the unavailability of the funds to satisfy her obligation as guarantor to Aspire. The following paragraphs in the Complaint allege Defendant's failure to explain the loss of funds:

- "Debtor was unable to satisfactorily explain the loss of assets or deficiency of assets to meet Debtor's liabilities, Debtor's failure to keep books and records, nor Debtor's delay and failure to produce the same." (*Id.* ¶ 24.)
- "Debtor has failed to produce documents from which one could ascertain the uses of transferred funds. Debtor has failed to, and, upon information and belief, cannot satisfactorily explain the transfer or the loss of assets to meet Debtor's obligations as guarantor of the Companies' loans to Aspire." (*Id.* ¶ 38.)

Since the Complaint contains factual allegations related to section 727(a)(5) with sufficient specificity, the Motion with respect to the fifth claim for relief is **DENIED**.

### F. Sixth Claim for Relief

#### *1. Section 523(a)(6)*

Section 523(a)(6) provides that section 727 does not discharge a debt "for willful and malicious injury by the debtor to another entity. . . ." 11 U.S.C. § 523(a)(6). The party asserting that the debtor acted willfully must prove that the debtor deliberately intended to injure the plaintiff and not merely that she committed an intentional act that unintentionally inflicted an injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A

person intends to injure another when she "desires to cause consequences of her act, or . . . she believes that the consequences are substantially certain to result from it." RESTATEMENT (SECOND) OF TORTS § 8A (1965). The "willfulness" test is subjective; the plaintiff must demonstrate that the debtor harbored the required intent and not that a reasonable person would be deemed to have intended the injury that ensued. *Hough v. Margulies* (*In re Margulies*), 517 B.R. 441, 453 (S.D.N.Y. 2014). Neither negligent nor reckless conduct will support a non-dischargeability claim under section 523(a)(6). *Kawaauhau*, 523 U.S. at 64.

In order to establish malice, plaintiff must prove that the debtor acted wrongfully and "without just cause or excuse, even in the absence of personal hatred, spite or ill will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir.1996); *accord Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006). Malice is implied when "anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Navistar Fin. Corp. v. Stelluti (In re Stelluti),* 167 B.R. 29, 33 (Bankr. S.D.N.Y. 1994) (internal quotation marks omitted), *aff'd*, 94 F.3d 84 (2d Cir. 1996).

*2. Analysis*

Section 523(a)(6) requires Aspire to plead both willfulness and malice. In the Opposition, Aspire cites the case *United States v. Shelmidine (In re Shelmidine)* for the proposition that "courts have routinely held that a debtor's conversion of a secured creditor's collateral may rise to the level of a willful and malicious injury." 519 B.R. 385, 392-93 (Bankr. N.D.N.Y. 2014). Nonetheless, the *Shelmidine* Court cautions that "a

willful and malicious injury does not follow as a course from every act of conversion without reference to the circumstances." *Id.* at 392. Similarly, another court has advised that "the key in conversion cases is to analyze each set of circumstances on a case-by-case basis to determine whether the conversion is in the nature of an intentional tort. . . ." *Avco Fin. Servs. v. Kidd (In re Kidd),* 219 B.R. 278, 284 (Bankr. D. Mont. 1998).

The Court concludes that the Complaint contains sufficient factual allegations that make the 523(a)(6) claim plausible. First, the Complaint adequately pleads that Defendant converted Plaintiff's collateral on numerous occasions. The alleged conversions include:

- "The funds transferred from the Companies represent Aspire's Collateral to which Aspire had a superior interest." (Compl. ¶ 35.)
- "Prior to the May 2016 default of Debtor's guaranties and the Companies' loan obligations to Aspire, Debtor's course of conduct was to cause the Companies to timely pay Aspire each month with business receipts. After Debtor's defaults, Debtor changed Debtor's course of conduct and transferred the business receipts, formerly remitted to Aspire, to Debtor and Debtor's businesses." (*Id.* ¶ 37.)
- "Without notice or written consent from Aspire, on or around September 30, 2016, Debtor, upon information and belief, caused 9T31 to sell a 2012 Toyota vehicle, (part of Aspire's Collateral) for a cash payment of $2,500. Debtor has failed to provide a receipt or bill of sale confirming the sale price and has failed to provide documentation showing what Debtor did with the cash. Debtor did not remit the $2,500 to Aspire." (*Id.* ¶ 40.)
- "On or about September 15, 2016, Debtor, upon information and belief, caused 9T31 to purchase a 2016 Toyota vehicle for $31,452.46 (part of Aspire's Collateral) with a $7,000 down payment by check drawn on Debtor's personal account. Without Aspire's consent, Debtor encumbered the 2016 Toyota with secured financing in the amount of $24,452.46, allowing a third party to place a lien on the vehicle. Debtor caused 9T31 to default on the monthly payments for the financing after only several payments." (*Id.* ¶ 41.)

- "Debtor caused the Companies to make numerous significant transfers from their accounts, which funds were Aspire's Collateral to which Aspire had a superior interest." (*Id.* ¶ 42.)

Second, the Complaint alleges circumstances from which willfulness and malice can be inferred. Specifically, Robinson entered into three loans from Aspire, each secured by Defendant's guaranty and a security agreement that prohibits sale or encumberment of the collateral without Aspire's prior written consent. (*Id.* ¶ 15–17.) This suggests that Robinson knew of Aspire's security interest in the collateral and was aware of her obligation to obtain Aspire's permission prior to the sale or encumberment. Moreover, after defaults on the loans, Robinson changed her course of conduct; she no longer remitted business receipts, allegedly part of Aspire's collateral, to Aspire on a monthly basis. Instead, she transferred these business receipts elsewhere. (*Id.* ¶ 37.) Here, malice can be implied because Robinson allegedly deviated from her contractual duty to remit business receipts to Aspire.

Because the Complaint pleads factual allegations related to section 523(a)(6) with sufficient specificity, the Motion with respect to the sixth claim for relief is **DENIED**.

## III. CONCLUSION

For the reasons explained above, the Motion to Dismiss each claim for relief is **DENIED.**

**IT IS SO ORDERED.**

Dated: January 11, 2019
New York, New York

_Martin Glenn_

MARTIN GLENN
United States Bankruptcy Judge