**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PLACIDA N. ROBINSON,<br><br>Debtor. | **NOT FOR PUBLICATION**<br><br>Case No. 17-10275 (MG)<br><br>Chapter 7 |
| ASPIRE FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>PLACIDA N. ROBINSON,<br><br>Defendant. | Adv. Pro. Case No. 18-01014 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR ENTRY OF DEFAULT JUDGMENT**

*A P P E A R A N C E S:*

Frydman LLC
*Attorneys for Plaintiff Aspire Federal Credit Union*
501 Fifth Avenue, 15th Floor
New York, New York 10017
By:   David S. Frydman, Esq.
        Glen Lenihan, Esq.


Placida N. Robinson
*Pro se Defendant*
700 Lenox Avenue Apt 7L
New York, New York 10039


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

This Opinion and Order concludes that a default judgment should be entered against the

debtor-defendant in this denial of discharge adversary proceeding because of the debtor-

1

defendant's blatant and continuing disregard of multiple orders entered by this Court.  The Court does not order this "ultimate sanction" lightly, but for the reasons discussed below, entry of a default judgment denying the debtor a discharge in this adversary proceeding is necessary and appropriate.

The chapter 7 case of debtor Placida N. Robinson ("Robinson") was filed on February 6, 2017.  On February 14, 2018, this denial of discharge adversary proceeding was filed by Aspire Federal Credit Union ("Aspire").  ("Complaint," ECF Doc. # 1.)  Aspire seeks to deny Robinson a discharge under sections 523 and 727 of the Bankruptcy Code.  The Complaint alleges that Robinson personally guaranteed over $1 million in loans from Aspire to her taxi companies.  (*Id.* ¶¶ 15, 17.)  The loans were secured by taxi cabs, taxi medallions, and account receivables.  (*Id.*)  The loans are in default.

The Complaint alleges that Robinson knowingly made materially false and misleading statements in her bankruptcy schedules concerning her assets, liabilities, financial condition, and business transactions.  (*Id.* ¶¶ 20, 21.)  The Complaint also alleges that Robinson failed to keep books and records (*id.* ¶¶ 25–31) and improperly disposed of Aspire's collateral, using the funds to pay personal expenses.  (*Id.* ¶¶ 34, 40, 41.)  Further, it accuses Robinson of making false statements and withholding of information in her Rule 2004 document production and testimony.  (*Id.* ¶ 27.)

Although Robinson now appears *pro se* in her chapter 7 bankruptcy case and in this adversary proceeding, she was previously represented by counsel.  Robinson's first lawyer filed her chapter 7 case.  He moved to be relieved as counsel because of disputes with Robinson.  His motion to be relieved was granted over Robinson's objection.  Robinson was then represented by *pro bono* counsel, who later moved to be relieved as counsel based on irreconcilable differences;

2

his motion to withdraw was granted over Robinson's objection on November 21, 2018. The Court thereafter extended deadlines so that Robinson could either obtain new counsel or proceed to defend the action *pro se*. Robinson has not found new counsel.

Before being relieved as Robinson's counsel, her second lawyer filed a motion to dismiss the adversary proceeding; the motion was denied in a written opinion on January 11, 2019. *See Aspire Federal Credit Union v. Robinson (In re Robinson)*, 595 B.R. 148 (Bankr. S.D.N.Y. 2019).

Two separate Court orders, the first dated January 14, 2019 ("January 14, 2019 Order," ECF Doc. # 44) and the second dated February 19, 2019 ("February 19, 2019 Order," ECF Doc. # 52) required Robinson to answer the complaint on or before March 2, 2019. Because of Robinson's repeated disregard of her discovery obligations, the February 19, 2019 Order also required Robinson to "*fully* respond to all outstanding written discovery on or before 5:00 p.m., February 26, 2019." (*Id.* at 2) (emphasis in original.) That same order provided that "[i]f Robinson fails to comply with the terms of this Order, plaintiff's counsel may move to strike her answer (if one has been filed) and, whether or not an answer has been filed, for entry of a default judgment." (*Id.*) Robinson has ignored the orders requiring her to file an answer. As further explained below, Robinson has also stonewalled Aspire's discovery.

On February 27, 2019, Aspire filed a motion for entry of a default judgment because of Robinson's failure to comply with the discovery provisions of the February 19, 2019 Order.[1] ("Motion for Entry of Default Judgment," ECF Doc. # 55.) On March 19, 2019, the Court denied without prejudice Aspire's motion for entry of a default judgment based on Robinson's failure to provide discovery. ("March 19, 2019 Order," ECF Doc. # 62.) The Court denied the

---

[1] The Motion for Entry of Default Judgment was based on Robinson's failure to respond to discovery; the motion was filed before the March 2, 2019 deadline for Robinson to answer the Complaint.

3

motion without prejudice because the Court required Aspire to show the prejudice it suffered by reason of Robinson's stonewalling of discovery—essentially for the Court to determine whether the ultimate sanction of a default judgment should be entered, or whether a preclusion order or some other relief was more appropriate in the circumstances. The order required Aspire to file a pleading outlining "(i) evidence Aspire intends to offer in support of the allegations made in the complaint and (ii) the documents that were demanded but not produced in response to the first document request." (March 19, 2019 Order at 4.)

Aspire filed the itemization of evidence and documents demanded but not produced. ("Itemization," ECF Doc. # 64.) In the Itemization, Aspire renewed its motion for the entry of a default judgment against Robinson based on her discovery abuse. (Itemization at 3–4 ("[P]laintiff has been prejudiced by Debtor's complete failure to produce documents as set forth in the outline below, default judgment should be entered against Debtor in this proceeding.").) Robinson filed a lengthy objection (with exhibits). (ECF Doc. # 69.)

Robinson's tardiness in defending her case and outright defiance of Court orders make it appropriate for this Court to **GRANT** Aspire's renewed motion for the entry of a default judgment against Robinson. Aspire has demonstrated that it has been seriously prejudiced by Robinson's stonewalling of discovery. The default judgment will have the effect of denying her a discharge of all liabilities under sections 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), 727(a)(4)(D), 727(a)(5), and her liability to Aspire under section 523(a)(6) of the Bankruptcy Code. (*See* Complaint ¶ 1.)

## I. BACKGROUND

The Court assumes general familiarity with the history of this case and focuses on the facts pertinent to whether the Court should enter a default judgment against Robinson.

On December 31, 2018, Aspire timely served on Robinson the first request for production of documents, demanding a response and production of documents by February 4, 2019. ("First Declaration," ECF Doc. # 55-1, ¶ 2.) On February 1, 2019, in light of Robinson's failure to produce any responsive documents, Aspire's counsel spoke with Robinson on the phone. ("Aspire's Letter to the Court," ECF Doc. # 55-3, at 1.) In that conversation, Robinson acknowledged her discovery obligations and confirmed her availability to conduct discovery. (*Id.*) On February 6, Aspire's counsel wrote to Robinson and again requested production of the same documents. (*Id.* at 2.) Aspire warned Robinson of the need for the Court's intervention if Robinson failed to respond to the document request by February 8, a four-day extension from the original deadline. (*Id.*) Robinson failed to produce any responsive documents. (First Declaration ¶ 3.)

By a letter dated February 13 (ECF Doc. # 49), Aspire requested a pre-discovery motion conference. In the letter, Aspire set forth its good-faith attempts to cause Robinson to comply with Aspire's request for documents. On February 19, the Court held a telephonic conference in which both parties had an opportunity to address the discovery default. On the same day, the Court entered the order resolving the discovery dispute, requiring that "Ms. Robinson shall *fully* respond to all outstanding written discovery on or before 5:00 p.m., February 26, 2019." (February 19, 2019 Order ¶ 1) (emphasis in original). On the evening of February 26, Aspire received a document from Robinson purporting to be a discovery response. ("Discovery Response," ECF Doc. # 55-5). In the Discovery Response, Robinson refused to produce documents, stating various boilerplate objections. (*See id.* at 2–17.)

After lengthy delays precipitated by Robinson's failure to follow the Court's orders and fulfill her discovery obligations, Aspire moved for the entry of a default judgment under

5

Bankruptcy Rule 7037(a)(4).  Aspire argues that Robinson's failure to respond by February 4, 2019 waived any objections and that Robinson's response on February 26, 2019 constitutes "evasive or incomplete disclosure, answer, or response [that] must be treated as a failure to disclose, answer, or respond."  (First Declaration ¶ 7.)  After the Court denied the Motion without prejudice, Aspire renewed the Motion in the Itemization and requests that the Court enter a default judgment against Robinson.

## II.     LEGAL STANDARD

Rule 37(b) of the Federal Rules of Civil Procedure allows a court to impose sanctions against a party who "fails to obey an order to provide or permit discovery under Rule 26(f), 35, or 37(a)."  FED. R. CIV. P. 37(b)(2)(A).  Sanctions range in severity and include "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party . . . ."  FED. R. CIV. P. 37(b)(2)(A)(iii) and (vi).

The court has "broad discretion in fashioning an appropriate sanction."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002).  Factors considered by the court in exercising its discretion to impose sanctions under Rule 37 include "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the noncompliant party had been warned of the consequences of . . . noncompliance."  *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.,* 694 F.3d 155, 159 (2d Cir. 2012) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302–03 (2d Cir. 2009)); *see also Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013).  "Because the text of the rule requires only that the district court's orders be just . . . and because the district

court has wide discretion in imposing sanctions under Rule 37, these factors are not exclusive." *World Wide,* 694 F.3d at 159 (quotation marks and internal citations omitted).

"[J]udges in this district often allude also to the prejudice suffered by the movant when assessing the propriety of a sanctions motion." *Local Union No. 40 of the Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Car-Win Constr.*, 88 F. Supp.3d 250, 262 (S.D.N.Y. 2015); *see, e.g.*, *Briese Lichttechnik Vertriebs GmbH v. Langton,* 2011 WL 280815, at *8 (S.D.N.Y. Jan. 10, 2011); *Martinez v. E & C Painting, Inc.,* 2008 WL 482869, at *4 (S.D.N.Y. Feb. 21, 2008). Although real prejudice to a litigant may support dispositive relief, a lack of prejudice should not overwhelm the overall analysis. *Southern New England Tel. Co. v. Global NAPs Inc. (SNET)*, 624 F.3d 123, 148 (2d Cir. 2010) ("[W]e, along with the Supreme Court, have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions . . . .") (citations omitted).

### III.   DISCUSSION

Aspire requests that the Court enter a default judgment against Robinson for failing to comply with her discovery obligations and violating the February 19, 2019 Order. The relief sought here is a severe sanction that should be granted only sparingly. *See World Wide*, 694 F.3d at 159; *Geltzer v. Giacchetto (In re Cassandra Grp.),* No. 02–2549, 2006 WL 897821, at *3 (Bankr. S.D.N.Y. Mar. 30, 2006). Although dispositive relief is a severe sanction, where there is a "continuing saga of dilatory conduct," entering a default judgment under FED. R. CIV. P. 37(b) is appropriate. *U.S. Freight Co. v. Penn Cent. Transp. Co.,* 716 F.2d 954, 955 (2d Cir. 1983). "[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant a sanction, but to deter those who might be tempted to such conduct

7

in the absence of such a deterrent." *Sieck v. Russo,* 869 F.2d 131, 134 (2d Cir. 1989) (quoting *Nat'l Hockey League v. Metro Hockey Club, Inc.,* 427 U.S. 639, 643 (1976)). Next, the Court sets forth Robinson's pattern of violating orders of this Court and explains why her behavior warrants the entry of a default judgment.

### A. Robinson Violated Numerous Court Orders

1. The 2017 Order

Robinson first violated this Court's order of July 12, 2017, when the Court entered an order directing her to appear for examination and produce documents pursuant to FED. R. BANK. P. 2004. (*See* "July 12, 2017 Order," Case No. 17-10275, ECF Doc. # 40, at 1.) On July 17, 2017, Aspire prepared a subpoena ("Subpoena") for a Rule 2004 examination. ("Second Declaration," ECF Doc. # 44-1, ¶ 5.) Since Robinson and her first counsel, Karam Dahiya ("Dahiya") had a falling out and Dahiya was preparing a motion to withdraw, he asked Aspire to communicate directly with Robinson. (*Id.*) After five attempts to serve the Subpoena, Robinson accepted service on August 7, 2017. (*Id.*)

The Subpoena required Robinson to produce documents by August 24, 2017 and appear for examination on September 19, 2017. (*Id.* ¶ 6.) Supported by a doctor's letter, Robinson claimed that she could not timely produce documents due to a medical issue. (*Id.*) Aspire conferred with Robinson in good faith and stipulated to extend Robinson's time to complete production of documents from August 24 to September 15, 2017, and to adjourn Robinson's examination from September 19 to September 28, 2017. (*Id.*) Robinson violated the stipulation and only made a partial production on September 15, 2017. (*Id.* ¶ 7.) On September 20, after further communication with Aspire, Robinson agreed to complete production by September 22. (*Id.*) Again, Robinson breached her agreement with Aspire, again making only a partial

8

production on September 22.  Robinson's partial production of documents not only breached her agreement with Aspire, it also violated the July 12, 2017 Order that required Robinson to produce documents enumerated in the Subpoena.

2. Robinson's Failure to File an Answer

Almost three months past the deadline, Robinson has not filed an answer to the Complaint.  Robinson's failure to file an answer violated the July 14, 2019 Order and the February 19, 2019 Order, both of which required Robinson to file an answer on or before March 2, 2019.  (January 14, 2019 Order at 1; February 19, 2019 Order at 2.)

3. Robinson's Violations of Discovery Obligations

In the Discovery Response, Robinson failed to produce any documents and objected to every request on the basis that the requests are "overbroad, unduly burdensome and harassing." (Discovery Response at 2–17.)  Robinson explains that she produced documents, including over 1,229 bank statements, tax returns, business records, transaction explanations, check images, vehicle registration and sales records, and financing documents in her chapter 7 bankruptcy case. ("Objection to the Motion," ECF Doc. # 60-1, at 5, 9.)  She contends that Aspire has these documents in its possession, which made Aspire's first document request "overbroad, unduly burdensome and harassing."  (*Id.*)

However, Robinson's failure to timely object to Aspire's first document request waives any objection which may have been available to her.  *See Labarbera v. Absolute Trucking, Inc.,* No. 08 CV 4581, 2009 WL 2496463, at *1 (E.D.N.Y. Aug. 12, 2009) ("It is well established that by failing to respond or object to a discovery request in a timely manner, a party waives any objection which may have been available."); *Eldaghar v. City of New York Department of Citywide Administrative Services,* No. 02 Civ. 9151, 2003 WL 22455224, at *1

9

(S.D.N.Y. Oct. 28, 2003) ("If a party fails to file timely objections to document requests, such a failure constitutes a waiver of any objections which a party might have to the requests.").

Generally, courts will only impose a waiver of objection under three conditions: (1) where there is no showing of good cause for the late response, (2) where a party has not responded to discovery requests despite court intervention, or (3) where a party has failed entirely to respond. *Callaway Golf Co. v. Corporate Trade Inc.,* No. 10 Civ. 1676, 2011 WL 1642377, at *2 (S.D.N.Y. April 25, 2011). Here, Aspire's document request was timely served on Robinson on December 31, 2018. (First Declaration ¶ 2.) Robinson did not produce a response to this request until February 26, 2019, 22 days after the deadline, and her response only occurred after the Court's intervention, namely, the entry of the February 19, 2019 Order. In fact, Robinson could have raised her objections any time from December 31, 2018 to February 4, 2019, but she waited until it was too late to object. Additionally, Robinson acknowledged her discovery obligations in the February 1, 2019 conversation with Aspire's counsel, without raising any objections. (Aspire's Letter to the Court at 1.) As a result, the Court imposes a waiver of objection for Robinson's tardiness.

Importantly, Robinson's status as a *pro se* litigant does not excuse her from meeting her discovery obligations and complying with the Court's orders. "[W]hile *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses*, have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions." *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir. 1988); *see also Davidson v. Goord*,

215 F.R.D. 73, 77 (W.D.N.Y. 2003) ("[W]hile *pro se* litigants are entitled to some leeway in complying with the Federal Rules of Civil Procedure, such tolerance does not extend to unexcused failures to comply with routine discovery requests").

### B. Robinson's Entrenched Noncompliance Warrants Entry of Default Judgment

#### 1. Willfulness and the Reasons for Noncompliance

The Court begins its examination of the relevant factors with "the willfulness of the non-compliant party or the reason for noncompliance." *World Wide*, 694 F.3d at 159 (quoting *Agiwal*, 555 F.3d at 302). Noncompliance is willful if a party receives notices of court orders and repeatedly fails to comply. *See Coach Inc. v. O'Brien*, No. 10-CV-6071, 2011 WL 6122265, at *3 (S.D.N.Y. Nov. 28, 2011) ("The Court deems the noncompliance willful given that these orders were mailed directly to [defendant's] address, and yet she repeatedly failed to comply."), *report and recommendation adopted and modified on other grounds*, 2012 WL 1255276 (Apr. 13, 2012). *In re Fosamax Prods. Liab. Litig.,* No. 06 MD 1789(JFK), 2013 WL 1176061, at *2 (S.D.N.Y. Mar. 21, 2013) ("Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control.") (citation omitted).

Here, Robinson's untimely and incomplete production of documents violated the July 12, 2017 Order. Robinson's failure to file an answer violated both the January 14, 2019 Order and the February 19, 2019 Order. Her noncompliance with these orders is willful because she received notices and repeatedly failed to comply. (*See* "Affidavit of Due Diligence and Acceptance of Service," Case No. 17-10275, ECF Doc. # 44, at 2; "Certificate of Service for Order dated January 14, 2019," ECF Doc. # 45; "Certificate of Service for Order dated February 19, 2019," ECF Doc. # 53.)

11

Pg 12 of 18

Moreover, Robinson willfully violated the February 19, 2019 Order. The language in the order is clear and not subject to any alternative interpretation. The order states that "Ms. Robinson shall fully respond to all outstanding written discovery on or before 5:00 p.m., February 26, 2019." (February 19, 2019 Order ¶ 1.) The Order was served on Robinson. (*See* "Certificate of Service for February 19, 2019 Order," ECF Doc. # 53.) Unlike Robinson's previous requests for extensions of deadlines, where her personal medical issue and then her sister's death supported her request for extensions of time, Robinson's noncompliance is not based on any factor beyond her control.

2. Efficacy of Lesser Sanctions

Next, the Court considers "the efficacy of lesser sanctions." *World Wide*, 694 F.3d at 159 (quoting *Agiwal*, 555 F.3d at 302). "[C]ourts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *S. New England,* 624 F.3d at 148. Mindful of Robinson's *pro se* status, the Court accommodated her requests on numerous occasions so that she could have more time to effectively respond to motions and comply with her obligations. For instance, following the withdrawal of Robinson's second counsel on November 21, 2018, the Court stayed her case "until December 13, 2018, to allow time for [] Robinson to retain new counsel." ("Order Permitting Perkins Coie's Withdrawal," ECF Doc. # 32, at 2.) Moreover, upon receiving Robinson's request to extend deadlines after the death of her sister, the Court further extended not only the deadline to file an answer from January 31, 2019 to March 2, 2019, but also the discovery deadline from December 13, 2018 to March 13, 2019. (*See* "Case Management & Scheduling Order # 2," ECF Doc. # 31, ¶ 1; "Robinson's January 14, 2019 Letter to the Court," ECF Doc. # 42.)

The Court's accommodations of Robinson's requests did little to change her approach to this adversary proceeding. Almost three months after the deadline, Robinson still has not filed an answer. Despite clear direction that she fully comply with her discovery obligations, Robinson untimely objected to producing the materials in Aspire's first document request, based on the unsupported contention that the discovery was unduly burdensome and not proportional to the needs of the case. The record makes clear that Robinson mistakes the Court's leniency for a lack of resolution to follow through with dispositive sanctions. "[I]f a court does not eventually follow through on its warnings, it risks undermining its ability to control current and future would-be wayward litigants." *Local Union No. 40*, 88 F. Supp.3d at 265; *see also Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1064 (2d Cir. 1979) ("[U]nless Rule 37 [sanctions are] perceived as a credible deterrent rather than a paper tiger, the pretrial quagmire threatens to engulf the entire litigative process." (quotation marks and internal citations omitted)).

After reviewing the record of this case from the past two years and in light of the numerous violations of Court orders, the Court concludes that no lesser sanction would induce Robinson's compliance in this case and that a severe sanction is necessary to deter similar behaviors of future litigants. Hence, the Court finds that this factor weighs in favor of entering a default judgment against Robinson.

### 3. Duration of Noncompliance

The third relevant factor is "the duration of the period of noncompliance." *World Wide*, 694 F.3d at 159 (quoting *Agiwal*, 555 F.3d at 302). Courts have found that noncompliance for more than several months justifies terminating sanctions. *See, e.g., Embuscado v. DC Comics,* 347 Fed. App'x 700, 701 (2d Cir. 2009) (dismissal after three months); *Agiwal,* 555

13

F.3d at 303 (six months); *Phelan v. Cambell,* 507 Fed. App'x 14, 16 (2d Cir. 2013) (seven months); *Ruzsa v. Rubenstein & Sendy Attorneys at Law,* 520 F.3d 176, 177 (2d Cir. 2008) (same); *Battiste–Downie v. Covenant House,* 471 Fed. App'x 78, 79 (2d Cir. 2012) (one year); *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42–43 (2d Cir. 1982) ("[A] pattern of dilatory tactics . . . consist[ing], for example, of groundless motions, repeated requests for continuances or persistent late filings of court ordered papers . . . may warrant dismissal after merely a matter of months."). Here, the duration of Robinson's noncompliance with the February 19, 2019 Order is more than three months. Robinson's noncompliance with Court orders, however, does not stop here. As elaborated above, Robinson never complied with the July 12, 2017 Order, which required her to appear for examination and produce documents pursuant to FED. R. BANK. P. 2004.

Robinson's duration of disregarding and violating the orders of this Court is not a matter of months but of years. The duration of Robinson's noncompliance with the orders of this Court strongly weighs in favor of entering a default judgment.

    4. <u>Prior Warnings</u>

The next factor is "whether the non-compliant party had been warned of the consequences of . . . noncompliance." *World Wide*, 694 F.3d at 159 (quoting *Agiwal*, 555 F.3d at 302). "[S]evere sanctions like dismissal or default should be imposed only if the party has been warned that such a sanction will follow from the continued noncompliance and has nevertheless refused to comply." *Urbont v. Sony Music Entm't,* No. 11 Civ. 4516 (NRB), 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6, 2014); *see also Murray v. Mitsubishi Motors of N. Am., Inc.,* 462 Fed. App'x 88, 90 (2d Cir. 2012) (summary order) (dismissing case where plaintiff "continued to ignore the court's orders despite the court's warning . . . that further noncompliance could result

14

in dismissal of the action"). Here, the February 19, 2019 Order unequivocally warned Robinson about the consequences of her failure to fully respond to Aspire's written discovery requests. The order explicitly stated that "[i]f Ms. Robinson fails to comply with the terms of this Order, plaintiff's counsel may move to strike her answer (if one has been filed) and, whether or not an answer has been filed, for entry of a default judgment." (February 19, 2019 Order ¶ 4.) Robinson continues her violation of the orders that she answer the Complaint on or before March 2, 2019. (*See* February 19, 2019 Order, at 2; January 14, 2019 Order, at 1.) Accordingly, the fourth factor weighs in favor of a default judgment.

        5.   Prejudice

Next, the Court turns to "the extent of the prejudice visited on the discovering party by its adversary." *Local Union 40 of the Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Car–Win Constr., Inc.,* 2014 WL 61443, at *3 (S.D.N.Y. Jan. 2, 2014). In various contexts, since courts consider undue delay to be prejudicial, a finding of prejudice does not require a probing analysis of the unproduced discovery documents. *See, e.g.*, *Alaimo v. Automotive Consulting,* 2010 WL 2884711, at *1 (S.D.N.Y. July 20, 2010) (stating that "prejudice [ ] always attends delay"); *Robertson v. Doe,* 2008 WL 2519894, at *7 (S.D.N.Y. June 19, 2008) ("When a defendant hinders the discovery of relevant information, the plaintiff suffers prejudice as a result of an involuntary delay in prosecuting its action."); *see also Harris v. Scadiero,* 94 Fed. App'x 860, 861 (2d Cir. 2004) ("A presumption of prejudice is appropriate where the plaintiff's delay was prolonged."). As explained above, Robinson's failure to file an answer and to comply with her discovery obligations has caused substantial delays, thereby inflicting prejudice on Aspire.

15

The prejudice here goes beyond delay. According to the Itemization, some of the documents that Aspire requested but were not produced include the following:

(1) documents concerning loans and capital contributions by, among and from you, the Companies and any third parties.

(2) documents concerning your legal or illegal renting, subletting, licensing or other agreements that you have entered into concerning a residence, including at 2238 Seventh Avenue, New York, New York, where you received (directly or indirectly) funds or other quid pro quo regardless of time period, including leases, subleases, renewals, payment devices, drafts, communications, notes and memoranda.

(3) applications and supporting documentation concerning your living arrangements or tenancy, including at 2238 Seventh Avenue, New York, New York, regardless of time period, including applications to the landlord and State of New York Division of Housing and Community Renewal Office of Rent Administration, financial statements, email, drafts, notes and memoranda.

(4) documents concerning existing or potential claims, actions, lawsuits or proceedings by you against Lassanah Turay, including drafts, communications, notes, logs and memoranda.

(5) documents concerning the ownership, administration and source of deposits into the Capital One Bank Account ending in 3313 regardless of time period, including account opening documents, drafts, communications, notes, logs and memoranda.

(Itemization at 9.)

Aspire explains how Robinson's violation of her discovery obligations hinders its ability to prosecute its case:

> Debtor did not produce check registers, checkbooks, copies of checks, deposit devices, wire transfers, backup such as invoices, etc. Debtor, accordingly, denied Aspire and the Trustee the documents necessary to determine the sources and uses of funds in the hundreds of relevant transfers referenced in the bank statements and credit card statements that defendant did produce (which statements had sporadic, partial descriptions of payors and payees). Debtor also did not produce any leases or cooperative documents making it impossible for Aspire and the Trustee to determine why defendant apparently had an apartment with governmental rent assistance – which likely required that defendant represent she was indigent and used the apartment as a primary residence – while defendant was actually living in a cooperative apartment that defendant testified she co-owned. Debtor has stated that she receives various forms of governmental assistance, received over $300,000

16

> in tuition assistance (that she has not repaid) and other benefits, but has produced no applications, correspondence, grant letters or any other documents concerning such assistance. From the partial production to date, it is clear that defendant misappropriated significant sums from the taxi companies, making numerous transfers, not using Aspire's loan advances for the stated purposes and using company accounts to routinely pay personal expenses. It would seem unlikely that defendant could have qualified for such massive public assistance if she honestly and fully revealed her true financial picture. It is clear that defendant has acted intentionally and with criminal intent in these cases. From not providing true information to counsel, making misstatements in the schedules and testimony and now making selective production in this adversary proceeding, it is clear that defendant has coldly calculated what to disclose and what not to disclose to protect from liability and to preserve continued governmental assistance, while trying to continue to deceive this Court and induce it to provide a discharge where none is due.

(Itemization at 4–5.)

Robinson's refusal to follow Court orders and her untimely objection to Aspire's document request undermine the assertion that she has provided all the documents in her possession. Robinson's behavior puts Aspire in the impossible position of having to litigate a case based on incomplete documents. Therefore, Aspire suffered prejudice as a result of the delay caused by Robinson's failure to file an answer and her repeated failure to comply with discovery obligations. This factor weighs in favor of entering a default judgment.

## IV.    CONCLUSION

Robinson is a highly educated individual with two degrees from Columbia University. Her actions in this case are disappointing and unacceptable. The Court has warned her about the consequences of failure to comply with Court orders. Case law supports the entry of a default judgment against a party who repeatedly violates court orders. *See In re Thomas Consol. Indus., Inc.*, 456 F.3d 719 (7th Cir. 2006) (affirming dismissal of adversary proceeding because the debtor and its counsel violated discovery orders and lied to the court); *Valner v. O'Brien (In re O'Brien)*, 351 F.3d 832 (8th Cir. 2003) (upholding the bankruptcy court's dismissal of a creditor's adversary proceeding due to repeated failures to obey order to appear for deposition);

17

*Schuette v. Lebbos (In re Lebbos)*, 385 B.R. 737 (Bankr. E.D. Cal. 2008) (striking defendant's answer and entering a default judgment after defendant repeatedly failed to appear for deposition and to respond to production requests). In addition to numerous violations of Court orders, Robinson's failure to file an answer independently supports the entry of a default judgment.

The Court hereby orders the entry of a default judgment against Robinson, denying her a discharge under sections 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), 727(a)(4)(D), 727(a)(5), and 523(a)(6) of the Bankruptcy Code.

Aspire's counsel shall prepare and submit a proposed judgment consistent with this Opinion pursuant to SDNY Local Bankruptcy Rule 9074-1(a).

**IT IS SO ORDERED.**

Dated: May 31, 2019
      New York, New York

                                      ___*Martin Glenn*_____
                                          MARTIN GLENN
                                  United States Bankruptcy Judge